United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Craig I. Hecker,
         Debtor.
_____/

Case No. 08-71680-R
Chapter 7

John Harris,
         Plaintiff,

v.

Adv. No. 09-4579

Craig I. Hecker,
         Defendant.
_____/

Opinion Regarding Plaintiff's Motion for Summary Judgment

I.

Pre-petition, the debtor, Craig Hecker, owned two dry cleaning businesses, Wesch Cleaners, Inc. and CIH United, Inc. He also owned several garment restoration businesses. On August 24, 2006, Hecker restructured his approximately $5 million debt to Comerica Bank. As part of the restructuring, Hecker granted to Comerica a security interest in all of the property of Wesch and CIH to secure loans made to Hecker and all of his businesses.

On January 26, 2007, Hecker sold 25% of his shares in Wesch and CIH to creditor John Harris for $450,000. As part of the agreement, Harris became the Vice President and General Manager of Wesch and CIH. Harris was to receive a salary of $100,000.

Beginning in September of 2007, Hecker reduced Harris's mandatory shareholder distributions and stopped paying his salary. In February of 2008, Hecker fired Harris.

Harris filed suit against Hecker in state court and, on November 18, 2008, obtained a default

judgment in the amount of $522,638.34.

On August 19, 2008, Comerica filed an action against Hecker and his various entities in the United States District Court seeking to foreclose on the property securing its loans. On September 5, the court appointed a receiver. On February 3, 2009, the court approved the sale of Wesch and CIH and all of their assets.

On December 30, 2008, Hecker filed for chapter 7 protection. On April 6, 2009, Harris filed this adversary proceeding complaint for a determination of nondischargeability under § 523(a)(2)(A) and (B). Harris alleges that the financial reports that Hecker provided to him prior to his purchase of 25% of Wesch and CIH were false and misleading in that they failed to disclose the true assets and liabilities of Wesch and CIH. Harris also alleges that the debtor falsely represented to him that the businesses were solvent and generated net profits of $600,000 per year.

Harris filed a motion for summary judgment. The Court conducted a hearing on January 25, 2010, and took the matter under advisement.

## II.

Harris contends that the financial statements that Hecker provided to him did not disclose the August 24, 2006 security agreement with Comerica. He only disclosed debts to Comerica of $1,360,991. Harris argues that he did not learn of Hecker's cross-collateralization agreement with Comerica until Comerica sued Hecker in August, 2008.

Harris asserts that in response to discovery requests, Hecker has failed to identify any documents provided to Harris which would have given Harris notice of the security interests of Comerica.

Harris asserts that he relied on Hecker's representations that Wesch and CIH were profitable and that Harris would be employed with Wesch and CIH and receive mandatory distributions.

2

Harris provided an affidavit in support of his motion.

In response to the motion for summary judgment, Hecker first argues that § 523(a)(2)(A) is not applicable because that section does not apply to statements regarding the debtor's or an insider's financial condition. Regardless, Hecker contends that Harris's claims must fail. Hecker argues that he did not make any misrepresentations to Harris and that all information regarding the financial condition of Wesch and CIH, including the debt and security interest to Comerica, were available to Harris at all times. Hecker asserts that the closing was delayed for one month because Comerica conditioned the release of its lien rights on the stock at issue on the payment of $163,154.30 to Comerica from the sale proceeds. Hecker argues that he was not obligated to disclose Comerica's security interest in his 75% interest in Wesch and CIH.

Hecker further contends that even if he made misrepresentations to Harris, Harris's reasonable and justifiable reliance are questions of fact.

Hecker provided an affidavit in support of his response.

III.

Under 11 U.S.C. § 523(a)(2)(A), a debt is nondischargeable if credit was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). If a statement is "respecting the debtor's or an insider's financial condition," however, it can only be found nondischargeable if 11 U.S.C. § 523(a)(2)(B) applies, and any such statement must be in writing. *See Willens v. Bones* (*In re Bones*), 395 B.R. 407, 429 (Bankr. E.D. Mich. 2008).

There is a split of authority regarding the interpretation of the phrase "respecting the debtor's or an insider's financial condition." The Sixth Circuit has not ruled on the issue. However, in an unpublished decision, the Bankruptcy Appellate Panel for the Sixth Circuit analyzed the issue,

3

stating:

> Few circuit courts have directly addressed this issue. Two views have emerged on the proper interpretation of the phrase "respecting the debtor's . . . financial condition." The "broad interpretation" includes any communication that has a bearing on the debtor's financial position. In other words, any communication addressing the status of a single asset or liability qualifies. *See Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 705 (10th Cir. 2005), *cert. denied* 547 U.S. 1163, 126 S. Ct. 2321 (2006). The strict interpretation, on the other hand, limits statements "respecting the debtor's . . . financial condition" to communications that purport to state the debtor's overall net worth, overall financial health, or equation of assets and liabilities. *See id.* at 705.

*Prim Capital Corp. v. May* (*In re May*), 2007 WL 2052185, *6, 368 B.R. 85 (Table) (B.A.P. 6th Cir. July 19, 2007).

The *May* court adopted the "strict interpretation," holding that statements "respecting the debtor's financial condition" are only those "that actually claim to state the debtor's overall financial health, net worth or assets and liabilities." *Id*. *See also Holmes v. National City Bank* (*In re Holmes*), 414 B.R. 115, 130 (E.D. Mich. 2009) (affirming bankruptcy court's strict interpretation of the phrase); *In re Bones*, 395 B.R. 407, 429 (Bankr. E.D. Mich. 2008) (same); *Buckeye Ret. Co., LLC v. Kade* (*In re Kadke*), 382 B.R. 411 (Bankr. S.D. Ohio 2008) (same).

This Court also adopts the strict interpretation and finds that the misrepresentations at issue concern the debtor's or an insider's overall financial health and thus must be in writing. Count I for denial of discharge under § 523(a)(2)(A) is therefore dismissed.

IV.

Under 11 U.S.C. § 523(a)(2)(B), a debt is nondischargeable if credit was obtained by:

4

> (B) use of a statement in writing
>
>> (I) that is materially false;
>> (ii) respecting the debtor's or an insider's financial condition;
>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>> (iv) that the debtor caused to be made or published with intent to deceive.

*Fahey Bank v. Benton* (*In re Benton*), 367 B.R. 592, 596 (Bankr. S.D. Ohio 2006); *Carson v. Chamberlain* (*In re Chamberlain*), 330 B.R. 195, 203 (Bankr. S.D. Ohio 2005).

A "materially false" financial statement is "one that paints a substantially inaccurate picture of a debtor's financial condition by misrepresenting information of the type which normally would affect the decision to grant credit." *Midwest Comm. Fed. Credit Union v. Sharp* (*In re Sharp*), 357 B.R. 760, 765 (Bankr. N.D. Ohio 2007); *Fifth Third Bank v. Collier* (*In re Collier*), 231 B.R. 618, 623 (Bankr. N.D. Ohio 1999).

Harris contends that the financial statements failed to disclose Comerica's liens on all of the assets of Wesch and CIH. Hecker contends that the 25% interest Harris purchased was free and clear of Comerica's liens. Hecker further contends that he did not make any representations regarding liens on his 75% stock interest in Wesch and CIH and he was not obligated to do so.

The Court however concludes that this information is material because it likely would have affected Harris's decision to invest. Accordingly, the financial statements Hecker provided were materially false.

Harris must also establish that he reasonably relied on the false statements. Generally, courts

5

have held that "reasonable reliance" is a question of fact to be determined in light of the totality of the circumstances. *BancBoston Mort. Corp. v. Ledford* (*In re Ledford*), 970 F.2d 1556, 1560 (6th Cir. 1992).

> Among the circumstances that might affect the reasonableness of a creditor's reliance are: (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Id.* (citations omitted).

The Court concludes that there are genuine issues of material fact as to whether Harris reasonably relied on the financial statements.

Finally, Harris must prove that when Hecker provided him with the financial statements, he did so with an intent to deceive. An intent to deceive does not require that the defendant acted with a "malignant heart." *Heritage Bank of St. Joseph v. Bohr* (*In re Bohr*), 271 B.R. 162, 169 (Bankr. W.D. Mo. 2001). It can be found "if a debtor is reckless when submitting financial statements that he knows are not true, not only if the debtor possesses a subjective intent to deceive." *Investors Credit Corp. v. Batie* (*In re Batie*), 995 F.2d 85, 90 (6th Cir. 1993).

The Court concludes that there are genuine issues of material fact as to whether Hecker intended to deceive Harris.

Harris's motion for summary judgment is therefore denied, in part, and granted, in part.

6

Not for Publication

**Signed on March 16, 2010**

                                                            /s/ Steven Rhodes
                                        **Steven Rhodes**
                                        **United States Bankruptcy Judge**